UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LARRY RODRIGUEZ, 99-A-3278,

                    Plaintiff,                No. 03-CV-6533 CJS(JWF)

   -vs-

                                          DECISION AND ORDER

DR. ALVES, SOUTHPORT DOCTOR,

                    Defendant.
_____

APPEARANCES

For plaintiff:         Larry Rodriguez, Pro se
                            99-A-3278
                            Wende Correctional Facility
                            P.O. Box 1187
                            Alden, New York 14004-1187

For defendant:       Emil Bove, Esq.
                            Office of the New York State
                            Attorney General
                            144 Exchange Boulevard
                            Rochester, NY 14614

INTRODUCTION

     This is an action pursuant to 42 U.S.C. § 1983, in which the plaintiff, Larry Rodriguez ("plaintiff"), a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), is suing John Alves, M.D., who at all relevant times was employed as a medical doctor at Southport Correctional Facility ("Southport"), for denial of medical treatment. Now before the Court are six motions: 1) plaintiff's motion for appointment of counsel [#22]; 2) plaintiff's motion to compel discovery [#32]; 3) plaintiff's motion for summary judgment [#36]; 4) plaintiff's motion to amend/correct his summary judgment motion [#39]; 5) defendant's cross-motion for summary judgment

[#41]; and 6) plaintiff's motion for oral argument on the pending motions [#46]. For the reasons stated below, plaintiff's motions are denied, except for his motion to amend/correct his summary judgment motion, and defendant's motion is granted, and this action is dismissed.

## BACKGROUND

The following are the undisputed facts of this case. At all relevant times, plaintiff was housed at Southport, where defendant was the Facility Health Services Director. Defendant provided medical treatment to plaintiff, who is HIV positive. Defendant attempted to prescribe plaintiff medication to treat his condition, however plaintiff refused that treatment. According to defendant,

> [t]he most effective currently known treatment for HIV is a combination of vitamins, including multi vitamins and vitamins B, C, and E with a regime of "Highly Active Antiretroviral Therapy ('HAART'), a combination of several antiretroviral medications which control the amount of HIV virus in a patient's body. HAART treatments can improve, increase CD4+ cell [T-Cell] counts and lower viral load.

Alves Aff. [#43] ¶ 6. Defendant repeatedly urged plaintiff to receive this treatment. Plaintiff, however, refused the treatment, calling the medications "toxic aids medication." Instead, plaintiff asked defendant to place him on a "high-protein diet," and specifically requested that he be given "Ensure" nutritional supplement. *Id*. at ¶ ¶ 8-9. Plaintiff states: "I asked him [defendant] over and over again to please prescribe a high-protein diet for me, so that my body cure itself as much as possible, by breaking the high-protein into gamma globulin, a disease-fighting antibody." Amended Complaint, Addendum p. 2. Plaintiff's belief, therefore, is that a high-protein diet alone would stimulate his body's immune system and enable him to be cured.

On October 28, 2003, plaintiff, proceeding pro se, commenced this action, claiming that defendant violated his rights under the 8th Amendment to the United States Constitution by acting with deliberate indifference to his serious medical needs. Pursuant to this Court's Order, service of the Summons and Complaint was performed by the United States Marshal for the Western District of New York, who mailed the Summons and Complaint to defendant at Southport on August 13, 2004. *See*, Docket [#25]. Defendant actually received the Summons and Complaint on August 19, 2004, and immediately requested in writing that the New York State Attorney General provide his defense. Defense counsel indicates that he wanted to review plaintiff's medical record before preparing defendant's Answer, and that on August 31, 2004, he wrote to plaintiff, requesting that plaintiff execute and return a medical waiver form to him. That same day, counsel also wrote to the Honorable Marian W. Payson, United States Magistrate Judge, who was then responsible for all non-dispositive pre-trial matters in the case, and requested an extension of defendant's time to answer, to October 7, 2004. Plaintiff did not object to the extension request. Plaintiff refused, however, to provide the requested waiver, thereby preventing defendant's counsel from obtaining his medical records.

Counsel's request for an extension of time was received in Magistrate Judge Payson's chambers on September 1, 2004. However, counsel received no response to his request. In this regard, the Court takes judicial notice of the fact that, at this same time, the case was being re-assigned from Magistrate Judge Payson to the Honorable Jonathan W. Feldman, United States Magistrate Judge, because of a conflict. Counsel wrote to Magistrate Judge Payson again on September 22, 2004, requesting an

extension of defendant's time to answer, because of the delay in obtaining plaintiff's medical records. Plaintiff did not object to the request. Magistrate Judge Payson did not respond to this letter, again apparently because the case was then in the process of being transferred to Magistrate Judge Feldman. Defendant filed an Answer on October 7, 2004, however, because portions of the Answer were missing, defendant re-filed the Answer on October 13, 2004. The Answer was signed electronically by defendant's counsel, as permitted by Rule 5(e) of the Federal Rules of Civil Procedure, the Court's General Order dated October 1, 2003, and Rule 5.6(b) of the Local Rules of Civil Procedure.

Plaintiff filed a motion for appointment of counsel [#22] on October 15, 2004. Plaintiff stated that he should be appointed counsel for two reasons: 1) he was confined at a psychiatric hospital; and 2) defendant was attempting to gain access to plaintiff's medical records through discovery. Plaintiff subsequently filed a motion that was docketed as a motion to compel discovery [#32]. In the motion, plaintiff asked the Court to order DOCS to release to him "medical records and administrative records." Shortly after plaintiff filed this motion, defendant, who by that time had apparently obtained plaintiff's consent to obtain his medical records, disclosed the information that plaintiff was seeking.

Plaintiff moved for summary judgment [#36] on January 18, 2005. Plaintiff claims to be entitled to summary judgment because defendant's Answer was filed late, and because the Answer contained the electronic signature of defendant's counsel, as opposed to a handwritten signature. Plaintiff subsequently filed a document that was designated as a "Motion to Amend/Correct" his summary judgment motion [#39], on

February 2, 2005, in which he essentially restates the allegations in the Amended Complaint regarding defendant's alleged denial of medical treatment. Plaintiff also filed a supplemental memorandum of law [#40].

Defendant filed an opposition to plaintiff's summary judgment motion and a cross-motion for summary judgment [#41] on March 4, 2005. Concerning plaintiff's motion for summary judgment, defendant contends that the answer was timely, based upon the facts set forth above. Alternatively, defendant requests that, in the event the Court determines that the Answer was untimely, that the late filing be excused. As for defendant's cross-motion for summary judgment, he contends that he is entitled to summary judgment since he attempted to provide plaintiff with the best possible medical treatment for his condition, which plaintiff refused.

During the briefing of the aforementioned motions, plaintiff sent dozens of letters to the Court, expressing his fear that corrections staff were tampering with his legal mail. Plaintiff also expressed concern that a particular fellow inmate had threatened to send correspondence to the Court that would be harmful to plaintiff's case, and to make it appear that plaintiff had sent the correspondence. In this regard, plaintiff filed a motion [#46] requesting that he be allowed to appear before the Court for oral argument, so that he could determine whether or not his correspondence was being tampered with. The Court notes, however, that based upon the sheer volume of letters it has received from plaintiff on an almost-daily basis, it appears that all of plaintiff's correspondence has reached the Court. Moreover, the Court has not received any of the type of letters that plaintiff feared would be sent by another inmate.

ANALYSIS

At the outset, the Court denies plaintiff's application for appointment of counsel [#22]. There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). In this regard, assignment of counsel is clearly within the Court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following:

    1. Whether the indigent's claims seem likely to be of substance;

    2. Whether the indigent is able to investigate the crucial facts concerning his claim;

    3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

    4. Whether the legal issues involved are complex; and

    5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986). As to the first factor, the Court finds, most importantly, that, as discussed below in connection with defendant's application for summary judgment, plaintiff's case is not likely to be of substance, since there is no indication that defendant violated plaintiff's constitutional rights. As to the remaining factors, the Court finds as well that none warrant the assignment of counsel.

The Court also denies plaintiff's application [#46] to appear for oral argument on the motions, pursuant to Rule 7.3 of the Local Rules of Civil Procedure. Moreover, the

Court denies plaintiff's motion to compel [#32], as moot, because plaintiff received the information that he was seeking in that motion as part of defendant's voluntary disclosures, made on or about January 14, 2005.  The Court does, however, grant plaintiff's application to amend/correct his summary judgment motion [#39], and the Court has considered the additional information that plaintiff submitted therewith.

The Court will now consider the parties' cross-motions for summary judgment. The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A court should read a *pro se* litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

      Considering first plaintiff's motion for summary judgment, the Court finds that his application [#36] is largely just a repeat of his earlier motions for default judgment [#23][#29], which the Court denied by Decision and Order [#33] on January 10, 2005. In those previous motions, plaintiff also alleged that defendant's Answer was untimely, and that defendant's counsel did not properly verify the Answer.  Now, plaintiff alleges that counsel's signature was defective because it was made electronically, however, the

Court disagrees. As noted above, the use of electronic signatures is permitted by Rule 5(e) of the Federal Rules of Civil Procedure, the Court's General Order dated October 1, 2003, and Rule 5.6(b) of the Local Rules of Civil Procedure. As for the timeliness of defendant's Answer, it is undisputed that it was filed more than twenty days after defendant was served. However, defendant made a timely request for an extension of time to file the Answer, to which plaintiff did not object. Moreover, defendant's unopposed request would have been granted by the Court, but for the apparent confusion occasioned by the transfer of the case between magistrate judges. Accordingly, defendant's request for an extension of time to Answer is granted *nunc pro tunc*, and the Answer is deemed timely filed. Plaintiff's summary judgment motion [#36] is therefore denied.

Turning now to defendant's motion for summary judgment [#41], the standard to be applied in a case involving an alleged Eighth Amendment violation arising from denial of medical care is well settled:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's *serious* illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an

> Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)(citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Here, defendant contends that he is entitled to summary judgment because he attempted to provide plaintiff with "[t]he most effective currently known treatment." Moreover, defendant states that the high-protein dietary supplements that plaintiff was requesting in lieu of such treatment "are not beneficial in treating AIDS. There is no medical basis for plaintiff's assertion that dietary or nutritional supplements would affect his weight loss, decrease his HIV viral load, or increase his CD4+ cell counts." Alves Aff. [#43] ¶ 9. In response to defendant's motion, plaintiff states: "[S]ee medical dictionary, look up <u>gamma globlin</u> [sic], and <u>protein</u>, and <u>antibody</u>, these three words are my evidence against the defendant's claim." Answer to Defendant's Cross-motion [#48], pp. 5-6 (emphasis in original). At plaintiff's request, the Court has consulted a medical dictionary, and has found the following definitions:

> **antibody**: any of a large number of proteins of high molecular weight that


are produced normally by specialized B cells after stimulation by an antigen and act specifically against the antigen in an immune response, that are produced abnormally by some cancer cells, and that typically consist of four subunits including two heavy chains and two light chains - called also *immunoglobulin*.

**gamma globulin**: 1 a: a protein fraction of blood rich in antibodies; b: a sterile solution of gamma globulin from pooled human blood administered esp. for passive immunity against measles, infectious hepatitis, or poliomyelitis; 2: any of numerous globulins of blood plasma or serum that have less electrophoretic mobility at alkaline pH than serum albumins, alpha globulins, or beta globulins and that include most antibodies - compare Antibody.

**protein**: 1: any of numerous naturally occurring extremely complex combinations of amino acids that contain the elements carbon, hydrogen, nitrogen, oxygen, usu. sulfur, and occas. other elements (as phosphorus or iron), that are essential constituents of all living cells, that are synthesized from raw materials by plants but assimilated as separate amino acids by animals, that re both acidic and basic and usu. colloidal in nature although many have been crystallized, and that are hydrolyzable by acids, alkalies, proteolytic enzymes, and putrefactive bacteria to polypeptides, to simpler peptides, and ultimately to alpha-amino acids; 2: the total nitrogenous material in vegetable or animal substances; esp.: crude protein.

MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY 1993. These definitions, however, do not create a triable issue of fact as to plaintiff's 8th Amendment claim. Plaintiff has come forward with no medical evidence to support his contention that a high-protein diet was an appropriate treatment for his condition. Therefore, he has not shown that defendant's refusal to provide him with the high-protein supplements he requested was medically improper. Nor has plaintiff produced any evidence to dispute defendant's assertion that the treatment defendant attempted to provide was the most effective treatment available. In short, plaintiff has produced no evidence to support his allegation that defendant acted with deliberate indifference to his serious medical needs.

CONCLUSION

For all of the foregoing reasons, plaintiff's motion to amend/correct his summary judgment motion [#39] is GRANTED, however, his motion for appointment of counsel [#22], his motion to compel discovery [#32], his motion for summary judgment [#36], and his motion for oral argument on the pending motions [#46] are all DENIED. Defendant's cross-motion for summary judgment [#41] is GRANTED, and this action is DISMISSED. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
April 26, 2005                ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge